UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

ANGEL NAVARRO

v.                                                              C.A. No. 09-223 ML

ASHBEL T. WALL, et al.

REPORT AND RECOMMENDATION

Jacob Hagopian, Senior United States Magistrate Judge

*Pro se* plaintiff, Angel Navarro ("Plaintiff"), an inmate detained at the Adult Correctional Institutions ("ACI") in Cranston, Rhode Island, filed a complaint (the "Complaint") on May 13, 2009 pursuant to 42 U.S.C. § 1983 ("§ 1983) and state law. Presently before the Court are three motions: (i) a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) (the "12(b)(6) Motion to Dismiss") filed by defendants Ashbel T. Wall, Director of the Rhode Island Department of Corrections ("RIDOC"); Deputy [Warden] Donna Collins; Former Captain Anderson; Captain William Galligan; Lieutenant Doyle; Lieutenant Freeman; and Warden James Weeden (together, the "Seven Defendants") (Docket # 43); (ii) a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 filed by defendant Dr. Martin J. Bauermeister (the "Summary Judgment Motion" or "SJM") (Docket # 40); and (iii) a motion for voluntary dismissal filed by Plaintiff pursuant to Federal Rule of Civil Procedure 41(a)(2) (the "Plaintiff's Motion for Voluntary Dismissal") (Docket # 46). Plaintiff objected to the former two motions (Dockets ## 41 & 45) while defendants objected to the latter motion, to the extent Plaintiff seeks dismissal without prejudice (Dockets ## 47 & 48). These matters have been referred to me for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons stated below, I recommend that all three motions be granted and that the claims be dismissed with prejudice.

BACKGROUND

The following background is based on the allegations in the Complaint and the exhibits attached thereto and, where indicated, other filings by Plaintiff in this action.

In 2005, Plaintiff testified against a sheriff, and, thereafter, was labeled an F.B.I. informant by unnamed ACI correctional officers in maximum security. Plaintiff's Affidavit dated Sept. 14, 2009 (Docket # 13), p. 2 (page numbers refer to docket pagination). In April 2005, Plaintiff told Defendant Dr. Bauermeister that he did not want to be sent back to maximum security because he had enemies there; however, on April 16, 2005, Dr. Bauermeister allowed

1

Plaintiff to be returned to maximum security. *Id.* The same day, an inmate named Roly used Plaintiff's telephone pin number to call Plaintiff's mother and asked Plaintiff's mother where Plaintiff was housed. *Id.* at Exhs. 1 & 2. Later that day, Roly and another inmate attempted to cut Plaintiff with a blade, but Plaintiff was able to get away. *Id.* at p. 1. Plaintiff told unnamed prison officials about the incident, but they did not look at the videotape of the incident or investigate Plaintiff's complaint. *Id.* at p. 1. At some point, Plaintiff requested Defendant Freeman to investigate the use of his telephone pin number by inmates in other buildings, but Defendant Freeman did not do so. Cmpt. at 6.

Beginning in April 2005 and continuing until at least August 2006, Defendant Dr. Bauermeister prescribed medication for Plaintiff, including antipsychotic drugs. *See* Plaintiff's Motion to Oppose Defendant Dr. Bauermeister's Answer (Docket # 19), p. 1; Plaintiff's Exhibits ("Plaintiff's Exhs.") (Docket # 33), Exhs. 13-24; Plaintiff's Exhibits in Opposition to SJM ("Exhs. in Opp. to SJM") (Docket # 42), Exhs. 68 & 73. Dr. Bauermeister did not inform Plaintiff regarding the potential side effects of the medication. Plaintiff's Memorandum of Law in Opposition to Defendants' Affirmative Defenses (Docket # 11), p. 8. Plaintiff told Dr. Bauermeister that he did not want to take the medication, explaining that he was not paranoid and that his enemy issues were real and not just in his mind. *Id.* at p. 9. Plaintiff now suffers from shaking and requires a higher dose of blood pressure medication than he required prior to taking the antipsychotic drugs. *Id.* at pp. 8-9.

On October 20, 2006, Plaintiff, who was housed in the High Security Center (the "HSC") of the ACI, refused orders to move to a cell in maximum security because he feared enemies there. As a result, Defendant Doyle ordered that he be fired from his prison job and charged him with insubordination. Defendant Galligan then found Plaintiff guilty on the disciplinary charge and assigned him to 30 days in segregation. However, Defendant Collins dismissed the disciplinary charge based on information from unnamed mental health staff that Plaintiff's "perception of enemy situation is, in his mind, genuine". Cmpt. at Exh. A.

On May 2, 2008, Defendant Galligan ordered that Plaintiff be moved to HSC B-mod, even though Plaintiff had told Galligan that he had enemies there. On May 3, 2008, Plaintiff wrote to Defendants Collins and Weeden requesting that they move him out of B-mod. Plaintiff refused to eat or shower with other inmates, and, four days later, was moved out of B-mod. After he was moved, Plaintiff received a message from unknown persons stating, "I was afraid because I knew that something bad was going to happen to me... ." *Id.* at Exh. E.

2

On May 18, 2008, Defendant Doyle ignored Plaintiff's written request for grievance forms. On May 19, 2008, Defendant Anderson ordered that Plaintiff be placed in F-mod, the disciplinary unit, even though Plaintiff had not been charged with a disciplinary infraction. However, such move did not occur. Then, on May 23, 2008, Defendants Anderson and Doyle placed Plaintiff in a cell behind the hospital, where he remained for 18 days, "for no reason at all just because [Plaintiff] wanted some grievance forms." *Id.* at p. 5.

On June 3 and 8, 2008, Defendants Galligan and Anderson, respectively, ignored Plaintiff's written requests for grievance forms. On June 10, 2008, Defendant Galligan threatened to spray Plaintiff if Plaintiff did not follow orders to move to HSC C-mod, where he did not feel safe, "just cause [Plaintiff] was asking for grievance all this time." *Id.* at p. 10.

Between June 22 and August 18, 2008, Plaintiff wrote letters to Defendants Wall, Weeden, and Collins asking for grievance forms; stating that he had enemies; and requesting protective custody housing and that Defendants Weeden and Collins speak with him in person.

Plaintiff was moved to HSC B-mod for a second time, from March 4 to March 7, 2009. *Id.* at Exh. C. While he was in B-mod another inmate tried, but failed, to put a group together to beat him up. *Id.* at Exh. G.

Plaintiff filed suit on May 13, 2009. Under a liberal reading of the Complaint, Plaintiff alleges that (i) Defendants Galligan, Anderson, Doyle, Wall, Weeden, and Collins violated his First and Fourteenth Amendment rights by refusing to provide him grievance forms and/or retaliating against him for seeking to file grievance forms; (ii) Defendants Galligan, Anderson, Doyle, Wall, Weeden, Freeman, and Dr. Bauermeister violated his Eighth Amendment rights by placing him at unreasonable risk of serious attack by fellow inmates; (iii) Defendants Wall, Weeden, Collins, and Freeman violated his Fourteenth Amendment due process rights by failing to investigate Plaintiff's complaints; (iv) Defendants Doyle and Galligan violated his Fourteenth Amendment due process rights by ordering that Plaintiff be fired and sanctioning him with 30 days in segregation, respectively, in response to Plaintiff's refusal to comply with orders to move to maximum security; and (v) Defendant Dr. Bauermeister committed malpractice and violated his Eighth Amendment rights to adequate medical care.

## DISCUSSION

### I. Interplay of Three Motions

Plaintiff has filed a motion to dismiss the action voluntarily pursuant to Federal Rule 41(a)(2). Federal Rule 41(a)(2) affords a court discretion to order the dismissal of an action at

the plaintiff's request, and directs that such dismissal shall be without prejudice unless the order states otherwise. Fed.R.Civ.P. 41(a)(2). Here Plaintiff seeks dismissal without prejudice, urging that his claims are viable and should be preserved for the future, while Defendants urge that, for the reasons set forth in the pending dispositive motions, the claims should be dismissed with prejudice. Accordingly, I address the dispositive motions to resolve the debate.

## II.   12(b)(6) Motion to Dismiss

### A.   Legal Standards for Motion to Dismiss and 42 U.S.C. § 1983

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim on which relief may be granted, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, -- U.S. --, 129 S.Ct. 1937, 1949 (2009)(citation omitted). The Court must accept a plaintiff's allegations as true, construe the allegations in the light most favorable to the plaintiff, and review pleadings of a *pro se* plaintiff liberally; *see Ferranti v. Moran*, 618 F.2d 888, 890 (1st Cir. 1980); however, the Court need not credit bald assertions or unverifiable conclusions, *see Iqbal*, 129 S.Ct. at 1949.

In order to state a § 1983 claim, the conduct about which plaintiff complains must (i) have been committed by a person acting under color of state law and (ii) have deprived the plaintiff of a federal constitutional or statutory right. *Gomez v. Toledo*, 446 U.S. 635, 640, 100 S.Ct. 1920 (1980). Here, as discussed below, Plaintiff has failed to allege facts sufficient to indicate that the Seven Defendants violated his federal rights.

### B.   First and Fourteenth Amendment Rights: Grievance Forms and Retaliation

Plaintiff urges that his First and Fourteenth Amendment rights were violated by (i) Defendants Galligan, Anderson, Doyle, Wall, Weeden, and Collins refusing to provide him with formal grievance forms on several occasions; and (ii) Defendants Galligan, Anderson, and Doyle retaliating against him for requesting grievance forms.

As discussed below, prison officials may not retaliate against a prisoner for exercising his First Amendment right to seek redress of grievances through an established prison grievance system. *See Hightower v. Vose*, 95 F.3d 1146, at *1 (1st Cir. 1996). However, with respect to Plaintiff's claim that his rights were violated by the refusal to provide him grievance forms, a prisoner does not have a constitutional right to a prison grievance system. *See Thomas v. Warner*, 237 Fed.Appx. 435, 437-38 (11th Cir. 2007); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994); *Mitchell v. Liberty*, No. 08-341, 2009 WL 33435, at * 5 (D.Me. Jan. 05, 2009). Additionally, to the extent prisoners have a First Amendment right to express their grievances to

4

prison officials, Plaintiff had available, and utilized, other means of expressing his concerns, as evidenced by the numerous letters attached as exhibits to the Complaint. *See Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999)(First Amendment right to petition the government is a right of expression and does not include a right to a response or action based on such expression) (citing *McDonald v. Smith*, 472 U.S. 479, 482, 105 S.Ct. 2787 (1985)). Further, the Complaint does not indicate that the alleged interference with his access to formal prison grievance forms impeded a nonfrivolous legal claim. *Cf. Lewis v. Casey*, 518 U.S. 343, 351-52, 116 S.Ct. 2174 (1996) (inmate must allege actual injury to a viable legal claim for standing to state a violation of access to courts claim). Finally, as discussed below, although Plaintiff states that the refusal to provide him grievance forms put his life in danger, he provides no facts supporting such bald assertion.

With respect to Plaintiff's retaliation claims, a claim asserting retaliatory conduct in response to exercising a constitutional right consists of three elements: (i) the plaintiff engaged in constitutionally protected conduct; (ii) the plaintiff suffered an adverse action that would deter a person of ordinary firmness from the exercise of the right at stake, and (iii) there was a causal connection between the constitutionally protected conduct and the adverse action. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999); *Price v. Wall*, 464 F.Supp.2d 90, 96 (D.R.I. 2006). Although a chronology of events may be adequate to support an inference of retaliation, a plaintiff must demonstrate that his or her constitutionally protected conduct was a motivating factor for the adverse action and that the retaliatory act would not have occurred "but for" the protected conduct. *See McDonald v. Hall*, 610 F.2d 16, 18 (1st Cir. 1979).

Here, Plaintiff urges that (i) on June 10, 2008, Defendant Galligan threatened to spray him if he refused to move cells because he had asked for grievance forms and (ii) Defendants Doyle and Anderson placed him in a cell behind the hospital for 18 days in retaliation for his asking for grievance forms. Although Plaintiff's claims that he was retaliated against for seeking to file grievances satisfies the first hurdle requiring constitutionally protected conduct, *see Hightower*, 95 F.3d 1146, at *1, both of Plaintiff's claims falter at the second and third steps of the retaliation analysis. First, a *threat* to be sprayed does not rise to the level of an adverse action that would deter a person of ordinary firmness from the exercise of the right at stake. Further, Plaintiff's own description of the threat (as based on his refusal to follow orders to move) belies a conclusion that the threat would not have occurred "but for" Plaintiff's requests for grievance forms. Second, the Complaint does not provide any facts or description of conditions suggesting that placement in a cell behind the hospital for 18 days was adverse.

5

Additionally, the chronology of Plaintiff's request for grievance forms on May 18, 2008 and the placement behind the hospital five days later, the only factual allegation in the Complaint regarding causation, is inadequate to support a claim that Defendants Doyle and Anderson placed Plaintiff behind the hospital because of Plaintiff's requests for grievance forms.

Accordingly, the Complaint fails to state cognizable claims against Defendants Galligan, Doyle, Anderson, Wall, Weeden, and Collins for failing to provide grievance forms and/or for retaliation in violation of Plaintiff's constitutional rights. I therefore recommend that the motion to dismiss filed by these defendants be GRANTED and such claims against them be DISMISSED WITH PREJUDICE.

### C. Eighth Amendment: Unreasonable Risk of Harm

An inmate may state a claim against a prison official under the Eighth Amendment for the failure to afford adequate protection from attack by another inmate if the plaintiff demonstrates that (i) the harm or risk of harm he suffered was objectively serious and (ii) the defendant official acted with "deliberate indifference" (*ie.* knew of and disregarded a substantial risk of serious harm to the plaintiff). *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S.Ct. 1970 (1994). And, while an inmate "need not await a tragic event" before seeking relief, *Helling v. McKinney*, 509 U.S. 25, 33, 113 S.Ct. 2475 (1993), he must show that serious injury was "*sure or very likely*" to occur and that the danger was "sufficiently *imminent*". *Baze v. Rees*, -- U.S.--, 553 U.S. 35, 128 S.Ct. 1520, 1530-31 (2008) (quoting *Helling*, 509 U.S. at 33-35).

Here, Plaintiff urges that the Seven Defendants placed him at unreasonable risk of attack by fellow inmates by the following actions: (i) Defendant Wall, Weeden, and Collins refusing his requests to be placed in protective custody; (ii) Defendant Weeden refusing to investigate why he wanted grievance forms; (iii) Defendant Freeman failing to investigate Plaintiff's complaint that other inmates were using his pin number to make telephone calls; (iv) Defendant Galligan moving him to B-mod for five days despite his telling Galligan that he had enemies in that unit; and (v) Defendants Galligan, Doyle, Anderson, Wall, Weeden, and Collins refusing to provide him with formal grievance forms.

However, even assuming that Plaintiff has enemies, Plaintiff's allegations against the Seven Defendants fail to state claims on which relief may be granted. First, the allegations in the Complaint do not indicate that Plaintiff has been injured or placed at unreasonable risk of serious harm to his future safety by the Seven Defendants' actions. The only references in the Complaint to physical attacks and threats (*ie.* a failed attempt by fellow inmates to cut Plaintiff in

6

April 2005; a veiled threat in May 2008 by unknown inmates suggesting that something bad may happen to Plaintiff; and a failed attempt by an inmate to get a group together to attack Plaintiff in March 2009) do not suggest that Plaintiff faces an unreasonable risk of imminent harm. And, although Plaintiff urges that fellow inmates stole and used his telephone pin number, it is unclear how such action, or the failure to investigate his complaints regarding the same, placed him in danger. Further, Plaintiff does not indicate how the acts of any of the Seven Defendants placed him in direct contact with, or at danger of attack by, any enemy. Accordingly, Plaintiff's Eighth Amendment claims that the Seven Defendants placed him at unreasonable risk of serious danger fail to state claims on which relief may be granted. I therefore recommend that the Seven Defendants' motion to dismiss such claims be GRANTED, and that such claims against the Seven Defendants be DISMISSED WITH PREJUDICE.

**D.    Fourteenth Amendment: Failure to Investigate; Job Loss; and Discipline**

To the extent Plaintiff is alleging that Defendants Wall, Weeden, Collins, and Freeman violated his rights to due process under the Fourteenth Amendment by failing to investigate his complaints, such claims fail. In order to state a procedural due process claim, a plaintiff must demonstrate a violation of a life, liberty, or property interest, *see Wilkinson v. Austin*, 545 U.S. 209, 221, 125 S.Ct. 2384 (2005), and, as referenced above, prisoners have no liberty interest in a grievance system or in having their complaints investigated. *See Apple*, 183 F.3d at 479-80; *Folse v. Jones*, No. 08-0717, 2008 WL 4909543, at *13 (W.D.La. Sept. 11, 2008)(citing cases from the 4th, 5th, 7th, 8th, and 9th Circuits).

Further, to the extent Plaintiff is claiming that Defendant Doyle violated his due process rights by ordering that Plaintiff be fired from his prison job in October 2006, such claim is not cognizable. "[I]t is clear that, unless state laws or regulations are to the contrary, prisoners have no vested property or liberty rights to either obtain or maintain prison jobs," *Dupont v. Saunders*, 800 F.2d 8, 10 (1st Cir. 1986), and Rhode Island law, which vests the RIDOC director with total discretion over whether ACI inmates may work, does not create any property or liberty interest in employment for prisoners, *see Young v. Wall*, 359 F.Supp.2d 84, 91 (D.R.I.2005)(citing R.I.Gen.L. § 42-56-22). Furthermore, the loss of prison employment or wages does not create an atypical and significant hardship upon which a liberty interest may be grounded. *See Sandin, v. Connor,* 515 U.S. 472, 484, 115 S.Ct. 2293 (1995); *Palermo v. Rhode Island ACI*, No. 10-221, 2010 WL 2731429, at *5 (D.R.I. June 16, 2010). As Plaintiff does not have a property or liberty interest in retaining his prison job, his due process claim against Defendant Doyle fails.

Similarly, to the extent Plaintiff is claiming that Defendant Galligan violated his due process rights by assigning Plaintiff to 30 days in disciplinary segregation for refusing orders to move to maximum security in 2006, such claim also fails. First, the assignment to segregation was dismissed, and, second, Plaintiff does not have a liberty interest in avoiding a 30-day term in segregation. *See Sandin,* 515 U.S. at 484.

Accordingly, Plaintiff's Fourteenth Amendment claims against Wall, Weeden, Collins, Freeman, Doyle, and Galligan fail to state claims on which relief may be granted. I therefore recommend that the 12(b)(6) Motion to Dismiss be GRANTED with respect to such claims, and that such claims be DISMISSED WITH PREJUDICE.

### III. Summary Judgment Motion

#### A. Legal Standard

Summary judgment can only be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is 'genuine' if it could be resolved in favor of either party, and a fact is "material" it it has the potential of affecting the outcome of the case. *Cadle Co. v. Hayes,* 116 F.3d 957, 960 (1st Cir. 1997). In considering a motion for summary judgment, the Court reviews all evidence in the light most favorable to the nonmoving party and draws all reasonable inferences in favor of the nonmoving party. *Id.* at 959.

#### B. Claims Against Defendant Dr. Bauermeister in the Complaint

In the Complaint, Plaintiff alleges that Defendant Dr. Bauermeister violated Plaintiff's rights by (i) deciding, and informing Defendant Collins in October 2006, that Plaintiff's enemy issues were "in his mind" without adequately investigating and (ii) prescribing unnecessary anti-psychotic medication that has caused Plaintiff physical pain and injury because the doctor "misjudge[d] a situation" (presumably determining that Plaintiff was mentally ill rather than facing real enemies). Cmpt. at pp. 6 & 9 and Exh. A. A liberal reading of these allegations suggest claims that Dr. Bauermeister (1) committed medical malpractice and violated Plaintiff's Eighth Amendment right to adequate medical care by misdiagnosing him and prescribing improper medication and (2) violated Plaintiff's Eighth Amendment right to be protected from unreasonable risk of harm by informing ACI officials that his enemy issues were in his mind.

Under Rhode Island law, medical malpractice claims require expert witness testimony in support of the claim, "except where the lack of care is so obvious as to be within the layman's common knowledge." *Marshall v. Tomaselli,* 372 A.2d 1280, 1283 (R.I. 1977). To succeed on

§ 1983 Eighth Amendment claims, a prisoner must show that (i) he suffered, or was placed at unreasonable risk of suffering, an objectively serious harm and (ii) the prison official acted with deliberate indifference to such harm (*ie.* knew of and consciously disregarded the substantial risk of serious harm). *Farmer*, 511 U.S. at 837; *Helling*, 509 U.S. at 33.

Here, however, Defendant Dr. Bauermeister urges, and I agree, that the record is inadequate to establish genuine issues as to material facts necessary to support Plaintiff's claims. With respect to the medical claims, (i) the deadline for disclosing expert witnesses has passed without Plaintiff naming an expert witness and (ii) Plaintiff points to no evidence in the record that there was a lack of care so obvious as to be within the layman's common knowledge. Additionally, although Plaintiff has stated that he intends to rely on his exhibits (including medical records and descriptions of drugs from the National Institute of Mental Health website) as his expert, the documents to which Plaintiff refers do not indicate that Dr. Bauermeister misdiagnosed Plaintiff or that he prescribed inappropriate medication. Plaintiff's Memorandum of Law in Opposition to SJM ("SJM Opp.") (Docket # 41), p. 2; Plaintiff's Exhs., Exhs. 2-29; Exhs. In Opp. to SJM, Exhs. 67-84. Further, although Plaintiff points to evidence that he had real enemies at the ACI (such as his own affidavits and a threatening note he received) and evidence that fellow inmates had stolen and misused his telephone pin number, such evidence does not support a finding that Dr. Bauermeister misdiagnosed or improperly treated Plaintiff.

Similarly, Plaintiff fails to point to evidence supporting his theory that Dr. Bauermeister knowingly placed him at an unreasonable risk of serious harm. The Complaint implies that the October 2006 comment that Plaintiff's "perception of enemy situation is, in his mind, genuine" (i) was made by Dr. Bauermeister and (ii) influenced the decisions by ACI officials to (1) allow Plaintiff to be placed in units where he claimed he had enemies and (2) deny Plaintiff protective custody. However, Plaintiff points to no evidence supporting this theory or, as discussed above, indicating that Plaintiff was harmed, or placed at risk of harm, as a result of his housing. In fact, Plaintiff states that a deputy warden told him that he could not be placed in protective custody because he was on the enemy list of an inmate there. Plaintiff's Memorandum of Law (Docket # 44), Plaintiff's Affidavit, p. 3. Further, the statement at issue refers only to Plaintiff's perception of his enemies as genuine; it is not a comment on whether Plaintiff had enemies.

Accordingly, Plaintiff has not shown that there is a genuine issue as to material facts necessary to support his claims, and, thus, Dr. Bauermeister is entitled to judgment as a matter of law. I therefore recommend that Dr. Bauermeister's Summary Judgment Motion be GRANTED

9

and Plaintiff's medical malpractice, inadequate medical care, and unreasonable risk of harm claims against Dr. Bauermeister be DISMSSED WITH PREJUDICE.

### C. Plaintiff's Additional Claims

In response to the Summary Judgment Motion, Plaintiff urges that he has valid claims against Dr. Bauermeister for (i) allowing Plaintiff to be sent back to maximum security on April 16, 2005 in violation of his Eighth Amendment right to be protected from an unreasonable risk of harm and (ii) forcing him to take unwanted medication without a hearing in violation of his Fourteenth Amendment due process rights. SJM Opp., pp. 1-5. However, although Plaintiff raised these issues in documents submitted to the Court subsequent to his filing the Complaint, they are not stated as claims in the Complaint, and Plaintiff never amended the Complaint to include such claims. (Further, as the statute of limitations applicable to Plaintiff's § 1983 claims is three years in Rhode Island, *see Cuadrado v. Devine*, No. 09-178, 2009 WL 2151392, at *3 (D.R.I. July 17, 2009), it is likely that Dr. Bauermeister's actions prior to May 13, 2006 are exempt from liability here.) As Plaintiff failed to raise the foregoing claims in the Complaint, Plaintiff's arguments regarding the same need not be addressed.

## IV. Plaintiff's Motion for Voluntary Dismissal

Accordingly, having recommended that all of the claims in the Complaint be dismissed with prejudice, I further recommend that Plaintiff's Motion for Voluntary Dismissal be GRANTED and that the Complaint be DISMISSED WITH PREJUDICE in its entirety.

## CONCLUSION

For the reasons set forth above, I recommend that the 12(b)(6) Motion to Dismiss, the Summary Judgment Motion, and Plaintiff's Motion for Voluntary Dismissal be GRANTED, and that the Complaint be DISMISSED WITH PREJUDICE.

Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of Court within fourteen days of its receipt. Fed R. Civ. P. 72(b); LR Cv 72(d). Failure to file timely, specific objections to this report constitutes waiver of both the right to review by the district court and the right to appeal the district court's decision. *United States v. Valencia-Copete*, 792 F.2d 4, 6 (1st Cir. 1986) (per curiam); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603, 605 (1st Cir. 1980).

/s/ Jacob Hagopian
_____
Jacob Hagopian
Senior United States Magistrate Judge
March 22, 2011